IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA


UNITED STATES OF AMERICA

v.                                              Criminal No. 2:11-cr-258

SHAWN THOMAS LESTER.


DEFENDANT'S SENTENCING MEMORANDUM and
MOTION IN LIMINE REGARDING SENTENCING HEARING

On June 13, 2012, Defendant Shawn Lester will be sentenced on two federal firearms charges: as a felon and a habitual drug user in possession of firearms. The evidentiary bases for these charges are two photographs of Lester holding a firearm on September 3 and 5, 2007. Lester pled guilty to both charges on January 30, 2012 without a plea agreement. Sentencing was scheduled for May 1, 2012.

On April 23d, the Government filed a sentencing memorandum requesting an upward variance sentence and proposing the Government would present the testimony of six witnesses. (ECF 47.) Two additional witnesses were added on May 21. (ECF 69.) Defendant moved to continue the hearing to allow time to prepare. The Court continued the hearing until June 13.

In 2011, the State of West Virginia charged Lester with three sniper-style murders that occurred in the Campbell's Creek area of Kanawha County in August 2003. That trial is now set for July 2012. The two photos of Lester with firearms from September 2007 are a miniscule part of the 75,000 pages of evidence produced in the State case. The Government offered only one plea agreement in the instant federal case, proposing that Lester plead guilty to first degree murder. Lester refused because

he maintains his innocence of the State charges. That is the reason that he pled straight up to the federal indictment.

Prosecutorial decisions have set up the instant sentencing situation. The United States did not charge Lester as a drug dealer under 21 U.S.C. § 841. There is no charge and no evidence (including that proffered for sentencing) that Lester used a firearm in furtherance of another felony, whether drug dealing or any other. During the probation officer's presentence investigation, the government made no claim and provided no evidence that Lester used more than the two guns he agreed he possessed in the two photographs when he pled guilty, although the interview transcripts of now-proposed witnesses would have sufficed to increase the base offense level on that basis. U.S.S.G. § 2K2.1(b)(1). Nor did the government produce evidence that Lester once possessed a sawed-off shotgun, which would have added two points. *Id.* at (a)(3). The government made no claim under the guidelines that the defendant obstructed justice by threatening a potential witness. (Lester denies that he has been in the same room with Rodney Shaffer, Jr. since they were arrested, much less threatened him in any way.) In any case, all such evidence would have been directly relevant to guideline calculations.

Instead, the government now seeks to throw masses of prior and subsequent alleged bad act evidence into the sentencing hearing, none of which was provided to the probation officer. This is an apparent attempt to prove by a preponderance of the evidence that Lester is a generally bad person who should therefore go to jail for as long as statutorily possible. The State may also be using this opportunity to prepare and test its murder trial witnesses or to assure a long sentence for Lester if, as is quite

possible, the State's theory of the sniper murders fails to persuade a jury beyond a reasonable doubt. (One of assistant United States attorneys on the federal case is also the lead prosecutor in the State case.)

**GUIDELINE CALCULATIONS**

In the event, however, Defendant Lester is being sentenced only on two counts of illegal possession of a firearm in September 2007. Given the evidence that was provided to the probation officer, Defendant agrees with the guideline calculations of the presentence investigation report (PSR). Those calculations take into account Lester's criminal history. They also include the determination that Lester was a habitual drug user in 2007 as he admitted as an element of his plea. Defendant agrees with the recommended guideline range of 37 to 46 months, based on a total offense level of 19, criminal history category III. Defendant asks the Court to sentence him within that guideline range as a sentence that is sufficient, but not greater than necessary to punish him for the two crimes to which he has pled guilty.

**SECTION 3553(a) FACTORS & MOTION IN LIMINE REGARDING SENTENCING HEARING**

**A.   Nature of the defendant and the offense**

Title 18 § 3553(a) sets out a wide range of considerations for the sentencing court, beginning most broadly with the nature of the offense and the defendant. *Id.* at (a)(1). Courts have "long recognized the sentencing judges 'exercise a wide discretion' in the types of evidence they may consider when imposing sentence[.]" *Pepper v. United States*, __ U.S. __, 131 S.Ct. 1229, 1240 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)). By statute, "[n]o limitation shall be placed on the information concerning the background, character, and conduct" to be considered at

3

sentencing. 18 U.S.C. § 3661. A court may consider even uncorroborated hearsay, "provided that the information has sufficient indicia of reliability to support its accuracy." *United States v. Wilkinson,* 590 F.3d 259, 269 (4th Cir. 2010). The reliability of the government's witnesses and their testimony will be tested by cross-examination at the hearing.

While acknowledging these principles of sentencing, Defendant nevertheless requests the Court to exclude or limit certain testimony, which is generally repetitive, unnecessary based on implicit stipulations, or of dubious reliability by its very nature, all as set forth more fully below.

**1.    Habitual drug use**

Shawn Lester pled guilty to being a habitual drug user in possession of a firearm. By his plea, Lester admitted to the court that he habitually used pain-killing drugs, some of which were illegally obtained. The government charged this habitual use, the defendant admitted it in open court, and thus there is an implicit stipulation that Lester is a habitual drug user.

Lester had two heart surgeries at the Cleveland Clinic in 2005: open heart surgery for bacterial endocarditis, which was preceded by resection of an association right mycotic carotid pseudoaneurysm. In 2006, Lester underwent followup heart repair at CAMC. *See* Ex. 1. Both the illnesses and the surgeries caused substantial pain that the doctors treated with addictive pain killers. Lester was drug free when he was released from federal prison in 2005. (The initial infection may have been caused by prison dental work or prison tattoos.) From 2005 through 2007, Lester was a habitual

prescribed drug user.  Sometime in 2007, his prescription was cut off and he began seeking illegal sources for his oxycontin, roxycontin and fentanyl habit.

As an element of his plea, Lester has admitted to being a habitual user of painkillers.  The government proposes that almost all of its witnesses will testify that Lester used illegal drugs, frequently by shooting them up directly into his stomach.  Lester has acknowledged his drug habit.  The evidence is unnecessary, unduly repetitive, and adds nothing to the information the court needs for sentencing.  Therefore, Defendant moves the Court *in limine* to limit testimony about Lester's habitual drug use.

### 2.  Drug dealing

The government proposes to introduce extensive testimony that Lester dealt drugs.  Like many addicts, Lester sold drugs to obtain drugs and did favors for Rod Shaffer, Sr., both as a friend and because he was a source of the painkillers Lester needed.  (In fact, the same is true of most of the government's witnesses.)  What is missing is any connection between drug dealing and the firearm possession that is the offense that is the subject of this sentencing.  The government chose not to charge Lester as a drug dealer and has not provided evidence that he used a firearm in furtherance of drug dealing – or any other crime.  Therefore, Defendant moves the Court to limit testimony about Lester's drug dealing, so that it is not repetitive and because it is minimally relevant to the actual charges for which Lester is being sentenced.

### 3. Fantasy

The government states that Alicia Ramey will testify about certain fantasies that Lester related to her while they were lovers. There is no evidence that Lester ever did more than muse on the subjects of keeping a woman as a sex slave or killing his ex-girlfriend. Nothing connects these alleged fantasies to any actual plans, preparations or acts of this sort. These fantasies are not "admissions," in that Lester does not admit to any actual act or fact. They are simply an expression of imagination. <u>Defendant moves the Court to exclude testimony about Lester's purported statements of fantasy or, alternatively, to give this evidence little weight in the sentencing process.</u>

### 4. "Stun gun" robbery

The government's supplemental sentencing memorandum (ECF 69) adds to its proposed evidence an audio recording between Lester and a confidential informant. The Government has since stated that the informant, Kevin Comer, will testify. According to the government's memorandum, the testimony will show that Lester "asked the informant to provide him with a stun gun and handcuffs" for a robbery, in the course of which Lester would kill the victim if he "has a certain amount of pills." *Id.* at 2. A stun gun is a device that produces an electric current to stun or incapacitate a victim. It is not a firearm as defined in 18 U.S.C. § 921(a)(3). This sentencing is not about murder – it is about illegal possession of firearms. The purported victim was not murdered or robbed; in fact, he was arrested for illegal drug possession. *Id.* And no firearm was involved.

Again, this is simply piling on of unauthenticated, potential crimes rather than actual acts of this defendant. The range of evidence a federal court can hear at

6

sentencing is limited only by its reliability; however, the usefulness of this evidence to a firearm possession sentencing is minimal, considering the range of relevant evidence the Court will hear.  <u>Defendant moves the Court to exclude this witness and the tape recording because its relevance to a sentencing for firearm violations is minimal.</u>

**B.     The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

The Government's sentencing memo argues that Lester should receive an upward variance based on purported post-arrest threats to Rodney Shaffer, Jr., which show his lack of respect for the law.  Lester denies threatening Shaffer, Jr., a proposition that will be tested at sentencing.

At the risk of over-repetition, the offense is being a felon and a habitual drug user in possession of firearms.  A guideline sentence appropriately addresses the seriousness of these charges and provides just punishment for *the offenses of conviction* – not alleged offenses for which Lester has not been convicted and for which he should not be sentenced.

**C & D.     The need for the sentence imposed to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant.**

The government points to the defendant's long history of criminal conduct that was continued after felony convictions.  Precisely that information informs the guideline calculation by setting the base offense level based on prior felony convictions, U.S.S.G. § 2K2.1(a)(1)-(4), and increasing the sentence based on the defendant's criminal history category.  Thus, the guideline sentence of the PSR takes all of this information into

account. No upward variance should be granted based on factors already employed to determine the just and sufficient sentence.

**E-H. The need for training, medical care, correctional treatment; kinds of sentences of available; Guideline sentencing range; and pertinent policy statements.**

None of these factors appear to be critical to this sentencing. To the extent they are relevant, the PSR addresses them.

**I. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.**

One of the statutory purposes of the Sentencing Guidelines is to narrow the wide disparity in sentencing imposed for similar criminal offenses imposed by similar offenders. *See* U.S.S.G. Ch. 1 Pt. A(3). That goal is seconded by § 3553(a)(I). The guideline factors of § 2K2.1 consider a range of variables critical to sentences for these 18 U.S.C. § 922 offenses. The government had no objection to the PSR prepared for this defendant. The PSR concludes that a guideline sentence of 37 to 46 months is the appropriate sentence that avoids unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar according.

### CONCLUSION

For all these reasons, Defendant moves the Court to sentence Shawn Lester for the two offenses of conviction within the guideline range of 37 to 46 months.

> **Respectfully submitted,**
>
> **SHAWN THOMAS LESTER**
> **By counsel**

**/s/ Deirdre H. Purdy__**
Deirdre H. Purdy (WVSB #7779)

407 Jarvis Road
Chloe, WV 25235
deirdre.purdy@gmail.com
304.655.7232 (phone)
304.551.0055 (fax)
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I, Deirdre H. Purdy, counsel for the Defendant, hereby certify that on this 6th day of June, 2012, service of the foregoing **DEFENDANT'S SENTENCING MEMORANDUM AND MOTION IN LIMINE REGARDING SENTENCING HEARING** was made upon the United States of America by filing this motion in the Court's CM/ECF system for electronic delivery to:

Gregory McVey
Maryclaire Akers
Assistant United States Attorneys
Greg.McVey@usdoj.gov
Maryclaire.Akers@usdoj.gov

                                            **s/ Deirdre H. Purdy**
                                            Deirdre H. Purdy